IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

Vs.                              No. 07-40140-01-SAC

RONALD EUGENE CHARLES, JR.,

          Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's pretrial Motion to Suppress (Dk. 14) evidence seized from his person on August 17, 2007. Ronald Eugene Charles, Jr. is charged with the single count of possession of a firearm after felony convictions in violation of 18 U.S.C. § 922(g). The defendant contends the officers unlawfully detained and searched him while he was walking on the outside stairs of an apartment complex courtyard.

The government has filed its response opposing the motion. (Dk. 15). The government contends the defendant rushed upstairs upon seeing bicycle officers approach the apartment complex. At the top of the first flight of stairs, the defendant ran into an officer who had already entered the courtyard. The defendant pushed this officer and tried to run

away, but officers subdued the defendant and found a firearm on his person.  The government contends the defendant committed a battery when he shoved the first officer justifying his arrest and subsequent search.  After hearing the parties' arguments and evidence on February 14, 2008, the court is ready to rule.

**FACTS**

The government presented the testimony of Patrick Hannan and Guy Gardner, both of whom were officers in the Topeka Police Department Bicycle Unit on August 17, 2007.  They described the Oak Tree Square Apartments as a square three-level building with an open-air courtyard in the middle.  They testified to having received numerous complaints about criminal activity within the courtyard and its vicinity involving drug sales and drinking.[1]  Officer Hannan recounted that the bicycle unit had stopped at the complex's courtyard during daylight hours at least twenty times but were never able to make contact with persons in the courtyard as they ran upstairs and into their apartments upon seeing the approaching officers.

While working a night shift on August 16 and 17, the bicycle unit

---

[1]The defendant's witness, Sharita Huggins, testified that she lived in Oak Tree Square and that everyone knew this was a rough neighborhood with drug activity.  She testified to having cleaned trash from the courtyard that included baggies commonly used with drug use.

planned and executed an approach upon the Oak Tree Square's courtyard so as to have officers in place to intercept persons fleeing the scene. The unit's approach was not in response to a particular or recent call about criminal activity at the apartment complex. Around 1:25 a.m., Officer Gardner and another officer entered the courtyard from the west side, went up the outside stairs, and positioned themselves before radioing other officers in their unit. Officer Hannan with the other officers then rode up to the south side of the apartment building from its parking lot.

Officer Hannan said he observed the defendant look up and see the advancing officers. Officer Hannan heard the defendant say, "oh shit," and then watched as he ran up the stairs. Officer Hannan yelled at the defendant to stop but he just kept running. When the defendant reached the first landing of stairs, he literally ran into Officer Gardner whose arms were outstretched. The defendant shoved Officer Gardner and attempted to run in a different direction. Officer Gardner grabbed the defendant by his shirt and started pulling him downstairs. Officer Hannan began helping Officer Gardner, but the defendant's resistance required a third officer's help before the defendant could be handcuffed. They conducted a pat-down search of the defendant and found a firearm tucked inside the

waistband of his pants.

The defendant presented the testimony of Sharita Huggins, a tenant of the Oak Tree Square and witness to the events in question. She testified that the defendant had been talking with her when he happened to notice a firearm laying in a mailbox that had popped open when he hit it. Concerned for the children in the area, the defendant tucked the firearm into his pants and began walking upstairs to dispose of it. When he reached the top of the stairs, the defendant and an officer looked at each other and then the officer simply grabbed the defendant. At this point, Ms. Huggins shouted "oh, shit" in response to what was happening to the defendant. She next noticed for the first time the advancing officers in the parking lot because of their lights.

The officers gave consistent, detailed and credible accounts of the event as it unfolded and resulted in the defendant's arrest. Ms. Huggins' version requires one to believe that the defendant accidentally discovered a gun, that he incidentally possessed the firearm in order to protect children from finding it, that the defendant coincidentally started walking away from the scene just before the officers began arriving, and that both officers mistakenly heard Ms. Huggins shout "oh, shit" and not the

defendant.  Ms. Huggins' version is further improbable in that it suggests Officer Gardner physically confronted the defendant without verbally identifying himself and did so before Officer Hannah and the other officers had even presented themselves.  For the event to have transpired consistent with Ms. Huggins' testimony, Officer Gardner would have not only unlawfully seized the defendant but would have done so in a manner risking the personal safety of himself and others.  The officers obviously had planned their approach on the courtyard in order to intercept those who would flee from the presence of law enforcement and reasonably would have wanted to execute it as planned.  The court finds the more credible weight of the evidence to be with the account given by the officers.

**ANALYSIS**

"The Supreme Court has said there are three types of police-citizen encounters."  *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007).  The first type is a consensual encounter that does not trigger Fourth Amendment protection; the second is an investigative detention that constitutes a "Fourth Amendment seizure[] of limited scope and duration and must be supported by a reasonable suspicion of criminal activity"; and the third is an arrest that is "the most intrusive of Fourth Amendment

seizures and reasonable only if supported by probable cause." *Id.* (quotation and citation omitted). In merely approaching the courtyard, secretively or not, the officers did not cause any seizure that implicates Fourth Amendment concerns. They did not "by means of physical force or show of authority . . . in some way restrain[ ] [Charles'] liberty." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (internal quotation marks omitted). The officers knew from experience and information that the courtyard was the site of unlawful drug activity. They heard the defendant yell, "oh, shit," upon seeing them and observed his unprovoked flight from the courtyard. These circumstances provided officers with reasonable suspicion to justify a so-called *Terry* stop. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).[2]

The officers, however, were not able to detain Charles until he had committed an offense in their presence giving them probable cause to arrest. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (A seizure requires "either physical force . . . or, where that is absent, submission to the assertion of authority.") Thus, the defendant was not seized when he

---

[2]A person may refuse to cooperate with the police, *Florida v. Royer*, 460 U.S. 491 (1983), but a person's "unprovoked flight is simply not a mere refusal to cooperate." *Illinois v. Wardlow*, 528 U.S. 119 (2000) (a suspect's unprovoked flight in response to police presence in a locale known for drug trafficking may justify stopping and detaining the suspect defendant for further investigation).

6

ignored the officers' commands and continued to flee. *Brendlin v. California*, --- U.S.---, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132 (2007) ("there is no seizure without actual submission"); *see, e.g. United States v. Jensen*, 41 Fed. Appx. 346, 349-50 (10th Cir. 2002) ("Jensen was not seized until he actually complied with the officers' requests to stop, a point in time after his initial attempt to flee." (citation omitted)). Once the defendant pushed Officer Gardner, there was probable cause to arrest the defendant for battery. After seizing the defendant, the officers conducted an appropriate search incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 236, (1973).

IT IS THEREFORE ORDERED that the defendant's Motion to Suppress (Dk. 14) is denied.

Dated this 11th day of March, 2008, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge