IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                          No. 07-40140-01-SAC


RONALD EUGENE CHARLES, JR.,

Defendant.


MEMORANDUM AND ORDER

The case comes before the court on the defendant's unresolved objection to the presentence report ("PSR").  The defendant pleaded guilty to a single-count indictment charging felony possession of a firearm.  The PSR recommends a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2) for committing this offense after two felony convictions, one for a crime of violence and one for a controlled substance offense.  With a total offense level of 21, after deducting the acceptance of responsibility adjustment, the guideline range is 57 to 71 months based on a criminal history category of four.   The defendant's remaining unresolved objection is that his prior federal conviction for escape from custody is not a

crime of violence in light of the Supreme Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581 (Apr. 16, 2008).

By the terms of U.S.S.G. § 2K2.1(a)(2), if the defendant's possession of the firearm occurred "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense," the defendant's base offense level is 24.  The meaning of "crime of violence" here is the same as the term is used in the career offender provisions at U.S.S.G. § 4B1.2(a) and application note one.  U.S.S.G. § 2K2.1, comment. n.1.  Section 4B1.2(a) defines a crime of violence as a federal or state felony offense, that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Thus, the first definition requires a particular statutory element in the offense, and the second definition breaks down into a list of enumerated offenses or an offense involving conduct that presents a serious potential risk of physical injury.

For purposes of this case, the definition of "crime of violence" under U.S.S.G. § 4B1.2(a)(2) is virtually identical to the definition of "violent

2

felony" found in the Armed Career Criminal Act, 18 U.S.C. § 924(e).  *See United States v. Moyer*, 282 F.3d 1311, 1315 (10th Cir. 2002).  Thus, the courts have employed the same approach in determining whether an offense meets these similar definitions.  *See, e.g., United States v. Krejcarek*, 453 F.3d 1290, 1294 (10th Cir. 2006); *United States v. Moore*, 420 F.3d 1218, 1220-21 (10th Cir. 2005).  The Supreme Court in *Begay* reiterated this general approach:

> In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.  *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting this "categorical approach"); *see also James v. United States*, 550 U.S. ---, 127 S. Ct. 1586, 1597 (2007) (attempted burglary is a violent felony even if, on *some* occasions, it can be committed in a way that poses no serious risk of physical harm).

128 S. Ct. at 1584.  In other words, a court looks only to the fact of the conviction and the statutory elements of the offense and generally omits any consideration of the particular facts found in the record of conviction. *Shepard v. United States*, 544 U.S. 13, 17 (2005);  *see United States v. Krejcarek*, 453 F.3d at 1294.  When a statue "is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding, such as the

3

charging documents, the judgment, any plea thereto and findings by the sentencing court." *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005) (quotation and citations omitted); *see United States v. Maldonado-Lopez*, 517 F.3d 1207, 1209 (10th Cir. 2008).

The defendant contends his federal conviction for escape from custody is not a crime of violence.  In that case numbered 05-20103-01, the defendant pleaded guilty to count one of the indictment that charged him with violating 18 U.S.C. §  751(a) by escaping the custody of a halfway house to which he had been confined by the Bureau of Prisons.  The Tenth Circuit has "repeatedly held that escape is categorically a crime of violence because it 'always constitutes conduct that presents a serious potential risk of physical injury to another.'"  *United States v. Avalos*, 506 F.3d 972, 980 (10th Cir. 2007) (quoting *United States v. Patterson*, 472 F.3d 767, 783 (10th Cir. 2006), *petition for cert. filed*, --- U.S.L.W. ---, (U.S. Dec. 27, 2006) (No. 06-10972)), *petition for cert. filed*, --- U.S.L.W. ---, (U.S. Mar. 21, 2008) (No. 07-10063).  In *United States v. Turner,* 285 F.3d 909, 916 (10th Cir.), *cert. denied*, 537 U.S. 895 (2002), the court explained that "[e]ven though initial circumstances of an escape may be non-violent, there is no way to predict what an escapee will do when encountered by the authorities.

4

Every escape is a powder keg, which may or may not explode into violence."  The defendant's objection opposes the established precedent in this circuit that an escape conviction plainly falls within the residual clause of the second definition for "crime of violence," that is, involving "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2)

The defendant argues the Supreme Court's recent decision in *Begay* "effectively overruled" this line of Tenth Circuit precedent.  While it adds another test to the application of the residual clause, the holding in *Begay* does not necessarily overrule the Tenth Circuit's characterization of escape as a crime of violence.  *See United States v. Nichols*, ---F. Supp. 2d---, 2008 WL 2619961 (S.D.W. Va. Jul. 3, 2008) (*"Begay* undermines the continued viability of *Mathias*" which is the Fourth Circuit precedent of *United States v. Mathias*, 482 F.3d 743 (4th Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3046 (Jul. 12, 2007), holding that walkaway escapes are crimes of violence)).  In *Begay*, the Supreme Court held that a prior felony conviction for drunk driving ("DUI") under a New Mexico statute was not a "violent felony" under the ACCA.  While assuming along with the lower courts "that DUI involves conduct that 'presents a serious potential risk of

5

physical injury to another,'" the Supreme Court found that DUI did not meet the second definition's residual clause[1] because DUI "is simply too unlike the provision's listed examples for us to believe that Congress intended the provision to cover it."  128 S. Ct. at 1584.

In interpreting and defining the scope of the residual clause in the second definition, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," the Supreme Court held that the offense not only must involve conduct with this risk but must be "roughly similar in kind" to those crimes enumerated before this clause. 128 S. Ct. at 1585.  The Court stated:

> In our view, the provision's listed examples-burglary, arson, extortion, or crimes involving the use of explosives-illustrate the kinds of crimes that fall within the statute's scope.  Their presence indicates that the statute covers only *similar* crimes, rather than *every* crime that "presents a serious potential risk of physical injury to another."  §  924(e)(2)(B)(ii).  If Congress meant the latter, *i.e.,* if it meant the statute to be all encompassing, it is hard to see why it would have needed to include the examples at all. . . .

128 S. Ct. at 1584-85.  The Court distinguished its recent decision in

---

[1]The second definition in the ACCA statute, 18 U.S.C. § 924(e)(2)(B), defines a "violent felony" as a crime that is:

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*James v. United States*, 127 S. Ct. 1586 (2007), as directed only at the

similarity in the degree of risk:

> Our recent case, *James v. United States*-where we considered only matters of degree, *i.e.*, whether the amount of risk posed by attempted burglary was comparable to the amount of risk posed by the example crime of burglary-illustrates the difficulty of interpreting the examples in this respect.  (citations omitted).  Indeed, the examples are so far from clear in respect to the degree of risk each poses that it is difficult to accept clarification in respect to degree of risk as Congress' only reason for including them. (citation omitted).

128 S. Ct. at 1585.  Applying basic rules of statutory construction, the

*Begay* Court concluded:

> These considerations taken together convince us that, "'to give effect . . . to every clause and word'" of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.  (citations omitted).

128 S. Ct. at 1585.  The Court confirmed its construction was consistent

with legislative history:

> Prior to the enactment of the current language, the Act applied its enhanced sentence to offenders with "three previous convictions for robbery or burglary." *Taylor*, 495 U.S. at 581. Congress sought to expand that definition to include both crimes against the person (clause (I)) an certain physically risky crimes against (clause (ii)). (citation omitted).  When doing so, Congress rejected a broad proposal that would have covered *every* offense that involved a substantial risk of th use of "physical force against the person or property of another."  *Taylor*, *supra*, at 583.

128 S. Ct. at 1585-86.  In sum, the holding in *Begay* is that a similarity in

7

the degree of risk is not enough for a crime to fall within the residual clause but that the crime must be "roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Begay*, 128 S. Ct. at 1585; *see United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008).

The *Begay* majority had no difficulty contrasting DUI in kind from the listed offenses.  While "[t]he listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct," DUI statutes "typically do not insist on purposeful, violent, and aggressive conduct."  128 S. Ct. at 1586.  The Court considered how using this level or kind of conduct as a threshold served the legislative purpose behind this statute:

> That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim. Crimes committed in such a purposeful, violent , and aggressive manner are potentially more dangerous when firearms are involved. 470 F.3d at 980 (McConnell, J., dissenting in part).  And such crimes are "characteristic of the armed career criminal, the eponym of the statute." *Id.*

128 S. Ct. at 1586.  The Court emphasized how this served the ACCA's purpose in linking the relevant criminal history of an offender "to the question whether he is a career criminal, or, more precisely to the kind or degree of danger the offender would pose were he to posses a gun."  128 S. Ct. at 1587.  While a prior DUI would "reveal a degree of callousness

8

toward risk," a listed crime roughly similar in kind to burglary or arson would "also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger."  128 S. Ct. at 1587; *see also United States v. Morris*, 527 F.3d 1059, 1061 (10th Cir. 2008).

The application of the *Begay* decision is hardly a simple proposition.  *Begay* does not offer an expanded exposition upon what it means for a crime to be "roughly similar in kind as well as in degree of risk posed" to the enumerated offenses.  128 S. Ct. at 1585.  As far as the "one pertinent and important" difference between DUI and the listed offenses, the Court focused on the kind of conduct "typically" involved in the latter: "purposeful, violent and aggressive."  *Id.* at 1586.  The *Begay* opinion does not say this is the only difference of importance in the comparing offenses, nor does it say what other differences may fall under the relevant meaning of "kind."[2]  Until the Supreme Court or the Tenth Circuit addresses the "in kind" test from *Begay*, this court will apply the test as a comparison of the

---

[2]Arguably, the Court indicates that the "kind" analysis should further the ACCA's purpose of linking an offender's criminal history "to the question whether he is a career criminal, or, more precisely to the kind or degree of danger the offender would pose were he to posses a gun."  128 S. Ct. at 1587.

conduct typically involved in that offense against the "purposeful, violent and aggressive" conduct typically involved in the enumerated offenses. *See United States v. Williams*, 529 F.3d 1, 7 (1st Cir. 2008) ("To help answer this 'in kind' query, the *Begay* Court adopted a new touchstone: asking whether the crime involves purposeful, violent, and aggressive conduct.").

Since *Begay*, some courts have expanded the "in kind" test to address more than the kind or nature of the typical conduct involved in the offenses.  For example, some courts have added the factor of whether the offense is a property crime.  *See United States v. Johnson*, 2008 WL 2725494, at *2 (5th Cir. Jul. 11, 2008) (terroristic threatening to cause the death of another person is not similar in kind to any of the enumerated offenses, because it "is not a property crime but a crime against the person."); *cf. United States v. Nichols*, 2008 WL 2619961 at *4 ("[T]he four enumerated crimes each involve inherent actions of trespass against persons, property, or both.").  If this is a proper reading and application of *Begay*, one is left with the question why the majority in *Begay* did not simply distinguish DUI as a non-property crime, or at least mention this distinction, instead of discussing how DUI did not involve purposeful,

10

violent and aggressive conduct.  There is no indication in *Begay* that it should be applied in such a liberal manner.  At the same time, this court will not limit *Begay* to its facts and content itself with how escape is different from DUI.  *See, e.g. United States v. Smith*, 2008 WL 2656254 at *2 (3rd Cir. Jul. 8, 2008) ("a conviction for unlawful restraint/involuntary servitude is not akin to a conviction for the strict liability offense of driving under the influence of alcohol.")

   Of the courts to have struggled with *Begay*, most have followed a straightforward reading and compared the enumerated offenses with the offense in question based on the nature and kind of criminal conduct typically[3] involved in each and whether the conduct is as purposeful, aggressive and violent as in the enumerated offenses.  *See, e.g., United States v. Archer*, ---- F.3d ----, 2008 WL 2521969 (11th Cir. Jun. 26, 2008) (carrying a concealed weapon is not a crime of violence); *United States v. Nichols*, ---F. Supp. 2d ---, 2008 WL 2619961 (S.D. W. Va. Jul. 3, 2008) (Escape under West Virginia law is not a crime of violence); *United States v. Dates*, 2008 WL 2620162 (W.D. Pa. Jun. 30, 2008) (simple assault is a

---

[3]The court stresses that its use of "typical" here is taken from *Begay*. The court anticipates the determination of the "typical conduct" involved in an offense could be a matter of some dispute.

crime of violence); *United States v. Henry*, --- F. Supp. 2d —, 2008 WL 2278898 (D. Conn. Jun. 4, 2008) (criminal violation of a protective order is not a crime of violence); *United States v. Urbano*, 2008 WL 1995074 (D. Kan. May 6, 2008) (fleeing and eluding an officer under Kansas law  is not a crime of violence).  The First Circuit followed this approach but also was candid about its struggles in doing so:

> Because a new test is introduced and because the Court's decision is itself close, it is hard to be absolutely certain how a majority of the Justices would apply the test to the crime at issue here-a crime that falls neither within the safe harbor of offenses with limited scienter requirements and uncertain consequences (like DUI, *see id.* at 1587), nor among those that have deliberate violence as a necessary element or even as an almost inevitable concomitant. Adjectives like "purposeful" and "aggressive" denote qualities that are ineluctably manifested in degree and appear in different combinations; FN7 they are, therefore, imprecise aids.
>
>> FN7. For example, even the crimes enumerated by Congress in the ACCA and treated as examples satisfy these requirements only in some measure. Burglary, for instance, can be described as purposeful but not, at least in most instances, as purposely violent or necessarily aggressive. Drug trafficking crimes similarly involve purposeful conduct but are only sometimes violent or aggressive.
>
> Notwithstanding this new gloss, a strong argument exists for treating the transport of a minor for prostitution as a violent crime. Unlike DUI, the crime is purposeful and the perpetrator is aware of the risks that the prostituted minor will face. The defendant may well use force to ensure the minor's compliance; but it is even more likely, and fully foreseeable, that the "clients" will endanger the minor's safety in various ways. As we have explained, the crime is implicitly (and sometimes explicitly) aggressive, and coercion of the minor is virtually inherent.

Admittedly, the case at hand is different in one respect from most crimes of violence: in other cases, the defendant himself is usually the agent of the violence (real or potential). Here, however, the violence often will be carried out by third parties. But since the risk of harm is so substantial and so easily foreseen by the defendant, we discern no basis for distinction. Surely, tying a man to the railroad tracks is an act of violence even though the oncoming train is the instrument through which inevitable harm is administered.

We need go no further. Only time and future cases can tell how the Supreme Court will develop its new definition.FN8 But delivering a minor for prostitution appears to us fairly readily to fall within both the Court's trio of adjectives and Congress's harm-based statutory definition (incorporated in the relevant guideline provision). Indeed, it is surpassingly difficult to see how burglary could be treated as a violent crime yet child trafficking exempted.

> FN8. Indeed, the Court has just agreed to review the question of classifying escape crimes. *See United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), *cert. granted*, 553 U.S. ----, 128 S.Ct. 2046, ---L.Ed.2d ---- (2008).

For the reasons elucidated above, we hold that a violation of section 2423(a) involves purposeful and aggressive conduct that presents serious potential risks of physical injury. The commission of that offense therefore categorically constitutes a crime of violence within the purview of USSG § 4B1.2(a).

*United States v. Williams*, 529 F.3d at 7-8.  These observations about the

ambiguity and imprecision inherent with this "in-kind" test certainly resonate

with this court.  These observations further commend this court's reading of

*Begay* with a good measure of common sense and appreciation for

precedent until the Supreme Court or the Tenth Circuit has had the time to

develop this new test.

The Tenth Circuit appears to have taken a similar approach

13

with regard to *Begay* and the offense of escape.  In a published opinion filed on May 12, 2008, almost one month after *Begay*, the Tenth Circuit summarily followed its precedent that "escape from a penal institution" is a "crime of violence."  *United States v. Ellis*, 525 F.3d 960, 965 (10th Cir. 2008).  Though the panel did not cite or discuss *Begay*, this situation is not one to warrant an inference that appellate panel overlooked relevant Supreme Court precedent.  The Supreme Court in *Begay* overturned a Tenth Circuit case.[4]  The *Ellis* decision cites the Supreme Court's decision after *Begay* to grant certiorari in *United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), *cert. granted*, 128 S. Ct. 2046 (U.S. Apr. 21, 2008) (No. 06-11206).  The more reasonable inference is that the parties did not argue the *Begay* decision before the court, and the panel also did not believe *Begay* to have necessarily overturned its precedent on escape being a crime of violence.  For now, the court believes itself bound to follow the Tenth Circuit precedent reaffirmed in *Ellis*.

Even without *Ellis*, this court would be inclined, for the following reasons, to find that the offense of escape from a prison facility involving

_____

[4]It is also noteworthy that Circuit Judge Hartz served both on the panel deciding *United States v. Begay*, 470 F.3d 964 (10th Cir. 2006), *rev'd*, 128 S. Ct. 1581 (2008), and on the panel later deciding *United States v. Ellis*, 525 F.3d 960 (10th Cir. 2008).

14

the defendant's unauthorized departure from a half-way house and failure to return until his arrest two and one-half months later[5] is roughly similar in kind as well as in degree of posed risk to the listed offense of burglary. The court will begin its analysis by looking at how the Supreme Court has characterized the typical conduct and risks involved with burglary and at why Congress listed burglary. In *Begay*, the Court relied on this definition of burglary taken from *Taylor*, "an unlawful or unprivileged entry into a building or other structure with 'intent to commit a crime'"). 128 S. Ct. at 1586. The Court in *Taylor* inferred the following congressional purpose for including burglary:

> "The most likely explanation, in view of the legislative history, is that Congress thought that certain general categories of property crimes-namely burglary, arson, extortion, and the use of explosives-so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.

495 U.S. at 597.[6] In *Taylor*, the Court also highlighted the "inherent

_____

[5]The dates of his unauthorized departure and his subsequent arrest are taken from the factual basis in the defendant's plea agreement filed of record in the federal case of No. 05--20103-01 in the District of Kansas.

[6]This legislative history taken from *Taylor* would support another factor relevant in determining similarity in "kind"--is the offense often committed by career criminals. The Court in *Begay* does not directly

15

potential for harm" and the typical violence involved in the offense of

burglary:

> The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.  And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to <u>escape</u>.  Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence and that were likely to be committed by career criminals.

495 U.S. at 588 (underlining added).  Just last year, the Supreme Court

reiterated the potential for violence inherent in burglaries:

> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party--whether an occupant, a police officer, or a bystander--who comes to investigate.  That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

*James v. United States*, ---U.S.---, 127 S. Ct. 1586, 1594-95 (2007).  Thus,

---

address this factor but does observe that "the intentional or purposeful conduct" involved with the enumerated offenses also "show an increased likelihood" of committing a  crime with a gun, 128 S. Ct. at 1587, and that "Congress' purpose [was] to punish only a particular subset of offender, namely career criminals," 128 S. Ct. at 1588.  For now, the "in-kind" test applied and used in *Begay* principally focuses on the nature of the conduct (purposeful, violent and aggressive).  If the "in-kind" test, however, also considers whether the crimes are often committed by career criminals, the offense of escape unquestionably matches that consideration.

burglary is purposeful and aggressive,[7] insofar as a person deliberately

enters a building without authority but with the intent to commit a crime that

would deprive another of property.  While the entry upon another's property

need not be violent, it does create the possibility of violence should the

burglar confront an occupant, officer or bystander.

To secure a conviction for escape under 18 U.S.C. § 751(a),

the government must prove beyond a reasonable doubt:

> *First*:  the defendant was in federal custody pursuant to a lawful
> arrest on a felony charge at an institution or facility where the
> defendant was confined by direction of the Attorney General for
> conviction of an offense;
> *Second*: the defendant departed without permission; and
> *Third*:  the defendant knew he did not have permission to leave
> federal custody.

Tenth Circuit Pattern Jury Instructions § 2.35 (2005) (citing *United States v.*

*McCray*, 468 F.2d 446 (10th Cir. 1972)).  The defendant erroneously

argues that escape is a "strict liability crime" like DUI.[8]  *See United States*

*v. Bailey*, 444 U.S. 394, 407-08 (1980) (a defendant must know "his actions

---

[7]As the First Circuit noted in *Williams*, burglary cannot be described,
"at least in most instances, as purposely violent or necessarily aggressive."
529 F.3d at 7 n.7.

[8]The *Begay* Court distinguished DUI from the enumerated offenses
because a drunk driver's conduct "need not be purposeful or deliberate"
and need only be accidental, negligent, or reckless. 128 S. Ct. at 1587.

17

would result in his leaving physical confinement without permission.")

An offender of 18 U.S.C. § 751(a) acts purposefully and deliberately by knowingly leaving the confines of his federal custody without the permission of federal authorities.  This roughly parallels the purposefulness[9] of a burglar who purposefully and knowingly enters upon another's property without authority.  The kind of deliberate conduct involved in an escape is not so far removed from the "deliberate kind of behavior associated with violent criminal use of firearms."  *Begay*, 128 S. Ct. at 1587.  While a burglar also has the intent to commit a crime, an escapee knows his actions will be resisted by federal authorities

---

[9]In *Nichols*, the district court elevates the purposeful requirement from deliberate conduct to mean "the *objective* to bring about harm to others or their property."  2008 WL 2619961 at *4.  To justify this enhanced requirement, the court focused on Supreme Court's reasoning in *Begay* that a criminal history including the enumerated offenses would "show an increased likelihood that the offender is kind of person who might deliberately point the gun and pull the trigger."  *Id.* at *4 (citing and quoting *Begay*, 128 S. Ct. at 1587).  The *Begay* opinion does not state that an offense is roughly similar in kind to the enumerated offenses only if it involves conduct having the particular purpose of harming others or their property.  Because the "in-kind" test is new and still largely undeveloped, this court is reluctant to layer additional meaning upon the Supreme Court's terms beyond what is plain from their application to the DUI offense.  *See supra* footnote five and *Begay*, 128 S. Ct. at 1587 ("We have no reason to believe that Congress intended to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms.").

18

specifically charged with the responsibility of doing so.  Thus, an escapee typically would calculate the risk of this confrontation in deliberately leaving federal custody.

The *Begay* opinion refers to conduct being aggressive **and** violent and offers no special meaning for the aggressive component. As commonly understood, aggressive behavior is offensive and forceful and characterized by initiating hostilities or attacks.  *See* American Heritage Dictionary of the English Language (4th ed. 2006).  The typical conduct involved in escaping from federal custody fits the meaning of aggressive as well as the typical conduct involved in burglary.  An escapee takes the offensive in defying the authority of the federal officers to confine him.  In doing so, the offender knows his actions will be considered hostile by the responsible federal officers who will be expected to resist, oppose and resolve the hostile situation with all reasonable force.  Similarly, a burglar takes the offensive in trespassing upon another's property for the purpose of taking something while knowing that any occupant of the property would likely consider the burglar's actions to be a hostile action.

As discussed above, the Supreme Court in *Taylor* identified the violent aspect of a burglary as the possible confrontation between the

burglar and the occupant or someone else investigating.  495 U.S. at 588.

The Court went so far as to recognize that "the offender's own awareness

of this possibility may mean that he is prepared to use violence if

necessary to carry out his plans or to escape."  *Id.*  More recently, the

Supreme Court in *James* described this same possible confrontation as the

"main risk of burglary."  *James v. United States*, 127 S. Ct. at 1594.  Thus,

a burglar's entry need not be violent, for it creates the possibility of violence

should the burglar confront an occupant, officer or bystander.  This same

kind of potential for violence exists with an escape offense, but it typically

exists to a greater degree.  With an escape, the offender may not need

violence to leave his confinement, but his offense is not over until he is

confronted by an officer in a situation typically accompanied by force and

violence.  *See United States v. Bailey*, 444 U.S. at 413 ("escape from

federal custody as defined in 751(a) is a continuing offense and . . . an

escapee can be held liable for failure to return to custody as well as for his

initial departure.").  As the defendant's plea agreement reflects, the

defendant was arrested over two months after his escape from the halfway

house.  If instead of surrendering immediately to the federal authorities, the

escapee tries to avoid capture and arrest, then he necessarily

20

contemplated the possible need for violence to avoid arrest.

The court is satisfied that the offense of escape in violation of 18 U.S.C. § 751(a) meets the trio of adjectives--"purposeful, violent and aggressive conduct"-- as apparently defined and applied in *Begay*. The risk of confrontation posed by an escape is roughly similar to the risk of confrontation in burglary. The most obvious difference is of degree with the risk involved in an escape being greater. The court, therefore, concludes that defendant's conviction for escape on the facts as appearing in the plea agreement is roughly similar in kind as well as in degree of risk posed by the enumerated offenses in U.S.S.G. § 4B1.2(a)(2).

IT IS THEREFORE ORDERED that the defendant's objection to the PSR is overruled.

Dated this 23rd day of July, 2008, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

21